IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

LAMONT CLEMENTS and
VERA CLEMENTS, his wife,

    Plaintiffs,

v.         CIVIL ACTION NO.  5:09-cv-00086

HSBC AUTO FINANCE, INC.,

    Defendant.

MEMORANDUM OPINION AND ORDER

The Court has reviewed Plaintiffs' Motion for Summary Judgment on Amended Pleadings [Docket 56] as well as Defendant's Motion for Summary Judgment on its Counterclaim for Declaratory Relief [Docket 54].  For the reasons stated herein, the Court denies in part and grants in part Plaintiff's motion, and denies Defendant's motion.

*I. INTRODUCTION*

This civil action was removed to this Court on January 30, 2009, pursuant to 28 U.S.C. §§ 1332(a) and 1441(a).  Plaintiffs originally filed this action on December 19, 2008, in the Circuit Court of Raleigh County, West Virginia.  Plaintiffs claim that Defendant's alleged debt collection activities towards them violated the West Virginia Consumer Credit and Protection Act (WVCCPA), West Virginia Code Section 46A-1-101 *et seq*.

On August 12, 2006, Defendant loaned Plaintiffs Sixteen Thousand Two Hundred Fifty-Two Dollars and Ninety-Two Cents ($16,252.92), to be paid over seventy-two (72) months at Three

Hundred Ninety-Eight Dollars and Seventy-One Cents ($398.71) per month, for the purpose of buying a 2002 Chevrolet Trailblazer.  In April 2008, Plaintiffs stopped making payments on their loan and Defendant commenced collection efforts the same month.  On May 20, 2008, Plaintiffs notified Defendant that they were represented by counsel, Mr. Paul Roop, and provided Defendant with Mr. Roop's phone number.  However, Defendant recorded that name as "Mr. Root."  The parties dispute  how this happened.  Defendant states that Plaintiffs never, again, attempted to provide them with their attorney information.  Defendant also indicates that their representative failed to follow its procedures and remove Plaintiffs from its calling queue after  Plaintiffs' notified Defendant  that they had obtained counsel.  However, Defendant states that Plaintiffs initiated contact with Defendant on at least four (4) different occasions after they notified Defendant that they were represented by counsel.

Plaintiffs allege that Defendant contacted them on nine hundred four (904) occasions (up to twenty-one (21) times per day) after they notified Defendant that they were represented by counsel. This included eight hundred eighty-seven (887) telephone calls, thirteen (13) written letters, and four (four) emails.  Not all of the calls were answered by Plaintiffs.  Mrs. Clements explained that, "And, I mean, after you answer the first couple of calls, then you just kind of stop answering. . ." Vera Clements deposition, Docket 34, Ex. 2 at 17.

However, Defendant states its  telephone logs show eight hundred eighty-one  (881) calls, and also point out that Plaintiffs' handwritten log only contains forty-eight (48) telephone calls.  It also indicates that its logs demonstrate that some of its telephone calls did not go through, due to a busy line, lack of dial tone, the phone being out of service, the autodialer calling the wrong number, or a failed call.  Further Defendant states that it maintained reasonable procedures to avoid violations

2

of the WVCCPA.  At deposition, however, one of Defendant's representatives, Ms. Linda Vrazel, testified that Defendant only follows Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.*, ("FFDCPA") obligations with respect to attorney-represented consumers, and has no procedures specific to the WVCCPA.  Ms. Vrazel also testified about Defendant's autodial and computer system.

> Plaintiff's Counsel ("Q"): Once it's routed to the collector, let's just say I'm a collector sitting at a screen. What do I see when that call is routed to me?

> Ms. Vrazel ("A"): The first screen you're going to see is the Davox screen, the dialer screen, which has the customer's name, the total amount that's due, and along with that, what pops up is what we call a Smart Bar, and that's going to have our alerts, so our compliance alerts. The next thing that pops up is our Debt Manager screen, which has the customer's name, the total amount due, the monthly payment, how many days past due, and it also would have the alerts in there. And it would have limited information on the first page, like the last payment received, the last three entries, the codes of the entries.

Vrazel deposition, Docket 57, Ex. 3 at 36-37.

> Q: So, automatically, they get the last three entries, but then beyond that they would have to actually go back and affirmatively look to see what's happened in the past?

> A: They would get the last three entries in regards to the codes that were used, not the full complete notes. They would get the Debt Manager code and the first part of the notes. They could go deeper to look for the complete notes of that.

> Q: In terms of compliance, at any given time is there a manager, supervisor, or other person responsible for going through the Debt Manager notes to assure that there is compliance with whatever laws are required?

> A: The unit manager's responsibility is to monitor calls, and if they were to find something in that call monitor that was a coaching opportunity or that was against policy or against -- not in compliance with FDCPA, then they would take action.

> Q:But in terms of actually going back through the historical notes regarding an individual debtor, there's no one who would do that to try to guarantee compliance with the law?
> . . . .

A: There is not a requirement for the unit managers to go through accounts
and review the notes.

Vrazel deposition, Docket 57, Ex. 3 at 38-39.

## II. ARGUMENT

### A. Plaintiffs' Motion for Summary Judgment on Amended Pleadings

Plaintiffs argue that summary judgment is appropriate for Defendant's alleged violations of West Virginia Code § 46A-2-128(e) ("the Representation Provision"). They argue that there exists no genuine issue of material fact that Defendant communicated with Plaintiffs after it appeared that Plaintiffs were represented by counsel. They state that Defendant had notice on May 20, 2008 that they were represented by counsel and that Defendant had the telephone number of such counsel. Moreover, after the notification on May 20, 2008, Plaintiffs state that Defendant admitted that it never attempted to contact their attorney. Plaintiffs further claim that there is no issue as to any material fact since Defendant's own records show that Defendant initiated communication with Plaintiffs on nine hundred four (904) occasions after Defendant was notified that Plaintiffs were represented by counsel and were provided with their attorney's telephone number.

Plaintiffs additionally argue that each telephone call placed by Defendant to their home constitutes a separate violation of the WVCCPA and exposes Defendant to a separate penalty for each violation. First, they point out that Defendant, in its notice of removal, stated that each violation exposed it to a separate penalty. Plaintiffs argue that Defendant should, therefore, be estopped from now making a contrary argument. Moreover, Plaintiffs also point to the Court's recent opinion in *Stover v. Fingerhut Direct Marketing, Inc.*, Case No. 5:09-cv-00152, Docket 69, 2010 WL 1050426, 2010 U.S. Dist. Lexis 25035 (March 17, 2010) ("*Stover I*"), where this Court held that legislative intent and public policy support multiple penalties, and also found that a

4

plaintiff could file a separate civil action for each violation. Therefore, Plaintiffs maintain that they are entitled to damages in the amount of not less than Three Hundred Ninety-Four Thousand One Hundred Forty-Four Dollars ($394,144.00), nor more than Three Million Nine Hundred Forty-One Thousand Four Hundred Forty Dollars ($3,941,440.00), plus fees and costs, pursuant to various provisions of the WVCCPA.

Moreover, Plaintiffs argue that the Due Process Clause of the Constitution is not violated by imposing a statutory penalty for each violation of the WVCCPA in this case. First, they argue that multiple safeguards exist in the WVCCPA to ensure that defendants are treated fairly and afforded due process. These include the provision of a range of penalties that allow for a continuum of remedies, the determination of the penalty by the court instead of a jury, and the fact that a court can decline to index the statutory penalties to inflation, thus limiting them to a range of One Hundred Dollars ($100.00) to One Thousand Dollars ($1,000.00). Plaintiffs argue that the correct metric in this case is not the loan amount compared to the maximum statutory penalties, but rather a comparison of the loan amount to the maximum value of a single penalty. They further argue that Defendant's focus on the statutory penalty and Plaintiffs' actual damages is misplaced, as the legislature separated awards of actual damages from awards of statutory penalties. They point the Court to *Verizon California, Inc., v. OnlineNIC, Inc.*, 2009 Westlaw 2706393 (N.D. Cal. 2009), a case where statutory damages in the amount of Thirty-One Million Five Hundred Thousand Dollars ($31,500,000.00) were upheld under a due process analysis. Moreover, Plaintiffs point out that the legislature has imposed a range of penalties for consumer abuse, and only in cases of repeat offenders, such as Defendant, do the aggregate totals appear large.

Defendant, in its response, only discusses its alleged violations of the WVCCPA.  It addresses Plaintiffs' other arguments in its own motion for summary judgment.  First, Defendant argues that Plaintiff's motion should be denied because any alleged violations were unintentional or the result of a bona fide error of fact despite the procedures it maintained to prevent such occurrences.  It claims that evidence of its policies to prevent errors is admissible and creates a genuine issue of material fact because those policies are specifically aimed at preventing violations of the WVCCPA and the Representation Provision of that statute.  It also states that even if its procedures are only aimed at avoiding violations of the Federal Fair Debt Collections Practice Act ("FFDCPA"), this is sufficient because the relevant language in the two statutes is identical, and because, as a creditor collecting its own debt, the FFDCPA does not actually apply to Defendant.

Additionally, Defendant argues that Plaintiffs failed to designate any evidence to dispute the reasonableness of Defendant's procedures.  According to Defendant, its policies provide that when a customer informs one of its employees that he or she is represented by counsel, the employee must note the attorney's contact information, terminate the call, and send the account to management to be removed from the call queue.

Defendant also distinguishes *Welker v. Law Office of Daniel J. Horwitz*, 699 F. Supp.2d 1164, 1172 (S.D. Cal. 2010) from the instant case.  In *Welker*, a FFDCPA case, the court held that the defendant failed to demonstrate that there was any genuine issue of material fact as to the application of the bona fide error defense because "none of the measures recited by Defendant demonstrate any procedures that he had at the time the error occurred that were reasonably adapted to avoid the specific error at issue."  Defendant argues that, unlike the defendant in *Welke*r, it did, indeed, have reasonable procedures to comply with the law.  It argues that, but for a single bona fide

6

human error wherein one of its employees failed to forward the name of Plaintiff's attorney to management, it would have ceased contacting Plaintiffs after they notified Defendant that they were represented by counsel.  It also argues that even if Plaintiffs designate evidence disputing the reasonableness of its policies, this would present a question of fact that cannot be resolved on summary judgment.

Further, Defendant argues there is a genuine dispute over the total number of times Plaintiffs' phone rang.  Defendant points out that some of its calls did not go through and that there is a discrepancy between its call logs and those of Plaintiffs.  Moreover, it argues that because Plaintiffs contacted it after they retained counsel, there is a genuine issue of material fact as to whether subsequent calls from Defendant to Plaintiffs were to follow up with them on these contacts. According to Defendant, under the law pertaining to summary judgment, it is entitled to such an inference even if there is no evidence of this.  Defendant also claims that there is a genuine issue of fact as to whether the name and address of Plaintiff's attorney was easily ascertainable.  Defendant argues that it is undisputed that Plaintiffs never provided their attorney's address, and that they can not offer any evidence that the address was easily ascertainable because the wrong name was recorded when Plaintiffs provided their counsel's name.

Moreover, Defendant argues that summary judgment must be denied because questions of fact remain as to whether Plaintiffs failed to mitigate their damages when they repeatedly failed to take reasonable steps to ensure that Defendant was aware that they were represented by counsel. It argues that Plaintiffs failed to provide the information regarding their representation on every call after May 20, 2008, and that neither Plaintiffs nor their attorney ever tried to contact Defendant about Plaintiff's attorney and their desired cessation of phone calls.  According to Defendant,

7

Plaintiffs must be held responsible for their failure to mitigate their damages when, unlike under other statutes providing for statutory penalties, they are trying to use the WVCCPA as a sword to abuse the system and obtain an unreasonable windfall. Finally, Defendant argues that summary judgment must be denied because there are issues of fact as to whether Plaintiffs consented to being contacted by Defendant, as they contacted Defendant themselves after they had informed Defendant that they had an attorney. It argues that it is entitled to the reasonable inference that Plaintiffs consented to further calls by initiating communication after notifying Defendant that they were represented by counsel.

Plaintiffs make multiple arguments in their reply to Defendant's response. First, they argue that Defendant's procedures and policies related to the handling of attorney-represented consumers are not reasonably adapted to prevent the errors made by Defendant. They point to this Court's language in *Stover v. Fingerhut Direct Marketing, Inc*., Case No. 5:09-cv-00152, 2010 WL 1507182, 2010 U.S. Dist. Lexis 30793 (S. D. W. Va. March 19, 2010) ("*Stover II*") stating that compliance with the FFDCPA was not a defense to WVCCPA violations.

Moreover, Plaintiffs argue that Defendant's compliance system is unreasonable on its face. Ms. Vrazel testified at deposition that Defendant's call center employees could only see the last three code entries on an account, and that management did not have to go through accounts and review the notes in order to ensure compliance with the law and internal procedures. Plaintiffs argue that Defendant's safeguards are inadequate to prevent the specific failure in this case, and that Defendant has not presented any evidence as to how they protect against or prevent errors made by that first point of contact receiving notice that a debtor was represented by counsel. Plaintiffs argue that as Defendant's review procedure only involves the random "listening in" of phone calls by

supervisors to monitor for "coaching violations" and violations of policy and the FFDCPA, these procedures are not related to how notes on the account are recorded and routed to management, and do not ensure that notice of attorney representation is conveyed to subsequent callers.  Contrary to Defendant's assertions, Plaintiffs argue that *Welker* is not distinguishable from the instant case because, as in Welker, Defendant's procedures do not address the errors that may have occurred in this case.  Plaintiffs argue that it is foreseeable that one of Defendant's employees may fail to correctly record information or follow procedure, and the Defendant did not undertake any efforts to detect or correct such errors.  Even viewing the facts in the light most favorable to Defendant, Plaintiffs argue that Defendant has failed to demonstrate that it took any measures to avoid, detect, or correct the error that led to the large quantity of phone calls from Defendant.

Next, Plaintiffs argue that there is not one scintilla of evidence that Plaintiffs requested that Defendant contact them after they notified Defendant that they were represented by counsel.  They argue that Defendant cites no facts supporting this assertion. Plaintiffs also point out that West Virginia Code Section 46A-1-107 prohibits a consumer from waiving or agreeing to forgo his or her rights under the WVCCPA

Additionally, they argue that they provided sufficient information for Defendant to readily ascertain their attorney's name and address since they provided Defendant with their attorney's name and telephone number.  They state that Defendant points to nothing in support of its interpretation of Section 46A-2-128(e), and that this theory is contrary to precedent that the WVCCPA is to be construed liberally.

Plaintiffs further argue that there is no genuine issue of material fact as to the number of communications from Defendant after it was notified that Plaintiffs were represented by counsel.

9

They state that Plaintiffs were only able to record a small number of the calls from Defendant, and that Defendant has offered no evidence to rebut its own logs, which Plaintiffs do not dispute.

Finally, they argue that the affirmative defense of mitigation of damages has no application to the WVCCPA's statutory penalties, citing *Moothart v. Bell*, 21 F.3d 1499, 1505-07 (10th Cir. 1994) (statutory penalties under ERISA); *Glover v. Mary Jane M. Elliott, P.C.*, Case No. 1:07-cv-648, 2007 WL 2904050 (W.D. Mich. October 2, 2007) (stating that failure to mitigate is not a defense to an award of statutory damages in a case involving the Michigan Collection Practices Act and the FFDCPA); and *Jemiola v. XYZ Corporation*, 802 N.E.2d 745, 750 (Ohio Cm. Pl. 2003) (in a case involving the Federal Telephone Consumer Protection Act and the Ohio Consumer Sales Practices Act, stating that the plaintiff had "no obligation to mitigate damages, since the amount of damages is specifically set by statute and is, therefore, mandatory.  In addition, mitigation of damages would undermine the legislative purpose by effectively rewarding the wrongdoer."). Plaintiffs argue that Defendant's various arguments blame Plaintiffs for this case, and that mitigation of damages is a tort and contract concept, not applicable here.  At most, according to Plaintiffs, mitigation of damages only applies to any claims for actual damages under the WVCCPA.

*B. Defendant's Motion for Summary Judgment in its Counterclaim for Declaratory Relief*

Defendant, in turn, makes its own arguments for summary judgment on its counterclaims for declaratory relief.

First, Defendant argues that Plaintiffs' requested application of West Virginia Code Section 46A-5-101(1) ("the Penalty Provision") to the facts of this case violates due process and it is not making a facial challenge.  Defendant points to federal and state case law that it argues holds that statutory penalties must comport with due process.  See, e.g., *St. Louis, I. M. & S. Ry. Co. v.*

10

*Williams*, 251 U.S. 63, 66-67 (1919) (stating that "states still possess a wide latitude of discretion [in imposing statutory penalties], and that their enactments transcend the limitation only where the penalty prescribed is so severe and oppressive as to be wholly disproportionate to the offense and obviously unreasonable.").[1]  Unlike other cases it cites, Defendant argues that the factual record in this matter is fully developed and a due process analysis is appropriate.  Further, Defendant argues that Plaintiffs have conceded in earlier briefing that the WVCCPA's statutory penalty is punitive, and that the due process analysis for punitive damages set forth in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (internal citations omitted) is, therefore, applicable.  Defendant argues that the disparity between Plaintiffs' actual damages and the penalty that Plaintiffs request is excessive.  Since it is undisputed that Plaintiffs have suffered no actual damages and that there is no likelihood of future harm, Defendant argues that any award greater than a single penalty violates due process.  Defendant states that *OnlineNIC, Inc.* is inapplicable, because the WVCCPA does not allow for multiple statutory penalties.  It also argues that as Plaintiffs can only recover one dollar in nominal damages, the statutory damages that Plaintiffs request would result in a grossly excessive ratio of Three Million Eight Hundred Seventy-One Thousand Two Hundred Forty-Four to One (3,871,244:1).  Defendant additionally claims that as Plaintiffs can not bring a separate lawsuit for each violation, any argument that the Court should compare only one penalty to Plaintiffs' actual damages is not appropriate.  Moreover, Defendant argues that the legislature allows courts to address the reprehensibility of a defendant's conduct by imposing a range for the statutory penalty, and because the difference between the statutory penalty supposedly sought by Plaintiffs

---

[1]  Defendant also cites to two other *cases—Perry v. Miller*, 166 W. Va. 138 (1980); *W. Va. Bd. of Med. v. Spillers*, 187 W. Va. 257 (W. Va. 1992)—but the Court finds that these cases bear no relation to the proposition that Defendant argues they support.

and the analogous criminal penalty under the WVCCPA shows that the award that Defendant claims the Plaintiffs request would be constitutionally excessive.

Next, Defendant argues that the Penalty Provision only permits one penalty per lawsuit. First, referring the Court to *U.S. Life Credit Corp. v. Wilson*, 171 W. Va. 538, 541 (1982), Defendant makes the argument that the Supreme Court of Appeals has held that the Penalty Provision is clear and unambiguous. According to Defendant, statutory construction is not necessary and the Penalty Provision unambiguously provides for one single penalty per action. Using the definition of "action" from Black's Law Dictionary, Defendant argues that the Penalty Provision should read "'[a] consumer has . . . a right' in a civil judicial proceeding 'to recover . . . a penalty.'" (Docket 55 at 12). Because the Penalty Provision makes no reference to a right 'per violation' or a right to recover 'multiple penalties' in an action, Defendant argues that the statute is unambiguous. Moreover, Defendant points the Court to *W. Va. ex. rel. McGraw v. Imperial Mktg.*, 203 W. Va. 203 (1998), a case under a different provision of the WVCCPA where the Supreme Court of Appeals held that only a single penalty was permissible. The legislature later amended the relevant section to allow for multiple penalties. Defendant also argues that, due to its due process argument, its construction of the Penalty Provision is necessary to sustain constitutionality.

Defendant also argues that analogous federal case law interpreting the FFDCPA supports the proposition that the penalty provision only provides for one lawsuit since both statutes are "remarkably" similar.[2] It also claims that sound policy dictates that only one penalty is possible, as

---

[2]  15 USC Section 1692c(2)(a) provides that "[w]ithout the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt . . .if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney (continued...)

12

"debtors who truly feel they are being harassed will bring suit quickly in order to stop the harassment and mitigate their damages" (Docket 55 at 12) and because the Legislature could not have intended for the WVCCPA to bring excessive windfalls to plaintiffs. *See also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1620-21.

Plaintiffs counter these arguments in their response. First, they argue that Defendant's request for declaratory judgment as to the constitutionality of imposing the maximum statutory penalty is not ripe for decision as the Court has not yet ruled on the case and controversy before it. As Defendant states that there is at least one constitutional application of the Penalty Provision, Plaintiffs claim that a facial challenge is inapplicable. In addition to the due process-related arguments they made in their own motion for summary judgment, in their response Plaintiffs argue that Defendant's position, that penalties which amount to multiples in excess of a single digit violate due process, is flawed. They argue that any case where the minimum penalty is imposed but wherein the consumer has minimal or no actual damages would still violate Defendant's own test, if this position were accepted. They also refer the Court to language from *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 777 (1995), wherein the Supreme Court of Appeals wrote that "[t]he purpose of the [WVCCPA] is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action." Relying on *Campbell*, 538 U.S. at 425, Plaintiffs state that where compensatory damages are possibly low, a higher punitive damage is permissible under a due process analysis. They also argue that it is unlikely that

---

[2](...continued)

fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer."

13

there would be any duplication of compensation between the actual damages and the statutory penalty that the Court may award.

Plaintiffs further dispute Defendant's contentions on the Penalty Provision.  They refer the Court to its holdings in *Stover I* in large part, and state that a debt collector who violates the WVCCPA should not be penalized in the same manner as a debt collector with a single violation.  A holding to the contrary "would only reward scofflaws who see the penalty associated with a violation as a marginal cost which diminishes as the number of violations increase."  (Docket 58 at 13).  They also make the argument that Defendant should not be able to benefit from Plaintiffs' resignation to their calls.  "The gravamen of the harm is the intrusion into the private space of the Plaintiffs, that is, their home, by the Defendant in a circumstance where the Legislature has sought to provide relief and protection for the individual." (Docket 58 at 14).

Defendant makes multiple new arguments in its reply.  First, they argue that they have made arguments in this case that were not covered in *Stover*, thus making Plaintiffs' reliance upon that case improper.  They argue that Plaintiffs' marginal cost argument is irrelevant, and that the proper analysis is that of what a consumer can gain by waiting for months after they retain an attorney to file suit.  Moreover, they state that the doctrine of claim preclusion requires a debtor to bring all previous alleged violations in the same suit, *United States v. The Haytian Republic*, 154 U.S. 118 (1894); *Goins v. JBC & Associates*, P.C. 352 F.Supp.2d 262, 266 (D. Conn. 2005), and that allowing debtors to bring multiple lawsuits would overburden the courts.  Defendant also disagrees with Plaintiff's description of their notice of removal, as they used the qualifier "could" in discussing the number of penalties that it was exposed to.  It argues that Plaintiffs have not countered its construction of the Penalty Provision or distinguished the FFDCPA cases that it has cited.

14

Defendant also disputes Plaintiffs' rebuttal on the due process issue.  It argues that its due process argument is ripe because Plaintiffs are requesting multiple penalties, and that the requested penalties violate due process under *Campbell*.  Moreover, it argues that as the Penalty Provision allows for recovery of actual damages, statutory penalties are punitive, and a single penalty would sufficiently deter future conduct and provide a sufficient remedy when injuries are hard to prove.

### III. STANDARD OF REVIEW AND APPLICABLE LAW

*A. Summary Judgment*

When federal court jurisdiction is based on diversity, the court must apply state substantive law and federal procedural law.  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  The standard for summary judgment is procedural.  Therefore, the federal standard applies.  *Gen. Accident Fire & Life Assurance Co. v. Akzona, Inc.*, 622 F.2d 90, 93 n.5 (4th Cir.1980).  To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  However, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor."  *Anderson*, 477 U.S. at 256.  Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, an evidentiary showing sufficient to establish that element.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

*B. The West Virginia Consumer Credit and Protection Act*

The Supreme Court of Appeals of West Virginia has indicated that the WVCCPA is to be

construed broadly:

> The purpose of the [WVCCPA] is to protect consumers from unfair, illegal, and
> deceptive acts or practices by providing an avenue of relief for consumers who
> would otherwise have difficulty proving their case under a more traditional cause of
> action.  As suggested by the court in *State v. Custom Pools*, 150 Vt. 533, 536, 556
> A.2d 72, 74 (1988), "[i]t must be our primary objective to give meaning and effect
> to this legislative purpose."  Where an act is clearly remedial in nature, we must
> construe the statute liberally so as to furnish and accomplish all the purposes
> intended.

*State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 461 S.E.2d 516, 523 (W. Va. 1995)

(internal citations omitted).  The statute provides, in part, that:

> No debt collector shall use unfair or unconscionable means to collect or attempt to
> collect any claim.  Without limiting the general application of the foregoing, the
> following conduct is deemed to violate this section-
> . . . .
> (e) Any communication with a consumer whenever it appears that the consumer is
> represented by an attorney and the attorney's name and address are known, or could
> be easily ascertained, *unless the attorney fails to answer correspondence, return
> phone calls or discuss the obligation in question or unless the attorney consents to
> direct communication.*

West Virginia Code Section 46A-2-128(e) (emphasis added).  Regarding the civil damages that a

plaintiff filing suit under the WVCCPA may be able to recover, West Virginia Code Section

46A-5-101(1) provides that "[i]f a creditor has violated the provisions of this chapter applying to

. . . any prohibited debt collection practice . . . the consumer has a cause of action to recover actual

damages and in addition a right in an action to recover from the person violating this chapter a

penalty in an amount determined by the court."  Additionally, West Virginia Section  46A-2-125

(the "Abuse Provision") prohibits a creditor from "unreasonably" oppressive and abusive behavior;

this includes, under § 46A-2-125(d), "[c]ausing a telephone to ring or engaging any person in

16

telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number."

This Court addressed several of the issues in this civil action in the *Stover I* decision. In relevant part, this Court held that unanswered telephone calls may constitute communication with a consumer under the Representation Provision, and that the Penalty Provision provides for a separate penalty for each violation thereof.

Further, the Court held in *Stover II* that the WVCCPA is an entirely separate statutory regime from the FFDCPA. In the context of whether a creditor's FFDCPA compliance procedures were sufficient to comply with the WVCCPA, this Court wrote that

> The "maintenance of procedures reasonably adapted to avoid any such violation or error" discussed in § 46A-5-101(8) refers to the adaption of a creditor's debt collection procedures to avoid violating the requirements of the WVCCPA. That phrase does not refer to the adaption of a creditor's FFDCPA compliance procedures to comply with the WVCCPA. The FFDCPA is an entirely separate statutory regime that exists under federal, not West Virginia, law. West Virginia courts have not interpreted § 46A-5-101(8) as allowing debt collectors to cite to their FFDCPA compliance efforts in defending a Representation Provision claim. Further, as the enactment of § 46A-5-101(8) of the WVCCPA predates the FFDCPA by three years, it cannot be argued that the West Virginia legislature enacted the former with the latter in mind. Compliance with the FFDCPA is not a defense to potential violations of the WVCCPA, and Defendant cannot invoke the FFDCPA in its defense.

*Stover II*, 2010 WL 1050426 at *6; 2010 U.S. Dist. Lexis 25035 at *19.

## *IV. DISCUSSION*

The Court finds that the WVCCPA provides for a penalty for each violation, and not a single penalty. First, Defendant's claims regarding the text of the Penalty Provision are misplaced. Despite their efforts, once again, to insert a square peg into a round hole, neither stands for the proposition that Defendant asserts nor is applicable to the instant case. The issue in *Wilson* was whether the plaintiff had a cause of action for actual damages and civil penalties under the Penalty

17

Provision due to unconscionable and unenforceable contract terms.  The Supreme Court of Appeals held that the "clear and unambiguous language" of the relevant portion of the provision resolved this issue in the affirmative.  *Wilson*, 171 W. Va. at 541.  The language in Section 101(1) that was at issue in *Wilson* is not the statutory language at issue in this case.  The  holding in that case is, therefore, inapplicable and Defendant's reliance upon it is inappropriate.  Contrary to Defendant's interpretation, Section 101(1) plainly allows multiple penalties.

> Section 46A-5-101(1) provides that "[i]f a creditor has violated the provisions of this chapter applying to ... any prohibited debt collection practice ... the consumer has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty." (Emphasis added). This provision gives consumers a right to a civil action whenever a violation occurs. Accordingly, if consumers can recover multiple penalties by filing separate actions for each individual violation, a plaintiff can also recover multiple penalties through consolidating his claims in one single action.  The statute is not written in a fashion that limits a consumer's recourse for multiple violations of a creditor.

*Stover I*, 2010 WL 1050426 at *7; 2010 U.S. Dist. Lexis 25035 at *21.  Defendant's argument that the Penalty Provision makes no reference of a right 'per violation' or a right in an action to recover 'multiple penalties' is not persuasive given that the statute provides for multiple civil actions. Defendant's claim preclusion argument and reliance on *Goins* are misplaced.  In *Goins*, 352 F. Supp.2d at 266-67, claim preclusion was an issue because the defendants argued that the plaintiff was trying to circumvent the FFDCPA's allowance of only a single penalty by filing multiple actions.  Here, however, the Penalty Provision allows for multiple penalties, and *Goins* and claim preclusion doctrine are, therefore, not applicable in the manner that Defendant asserts.

 Defendant's reliance on *Imperial Marketing* and the subsequent amendment of West Virginia Code Section 46A-7-111(1) is also erroneous.  This Court has already previously held that

> *Imperial Marketing* is not an applicable case.  As stated earlier, the provision at issue in that case applies to multiple willful violations, not single violations, and deals with

suits filed by the Attorney General and not consumers. Imperial Marketing can also be distinguished from the case at bar by the subject matter of the former's litigation. That case was brought by the Attorney General under the West Virginia Prizes and Gifts Act, W. Va.Code § 46A-6D-1 *et seq*. It involved a direct marketing scheme that tied prize awards and gifts to product purchases. The underlying behavior litigated in Imperial Marketing is not similar or related to the activity covered by § 46A-5-101(1), consumer debt collection practices.

*Stover I*, 2010 WL 1050426 at *6; 2010 U.S. Dist. Lexis 25035 at *19.

Additionally, the Court finds that Defendant's reliance upon the FFDCPA is inappropriate. This Court held in *Stover* that the WVCCPA and FFDCPA are two entirely separate statutory schemes and that the latter does not inform the former. The Court finds the same here with regard to the issue of multiple penalties. Defendant's argument that sound policy provides that the Penalty Provision only provides for one penalty is also incorrect. Indeed, the opposite is actually true.

> [T]here are important public policy reasons for finding that § 46A-5-101(1) allows for multiple civil penalties. This is evidenced by the jurisprudence of the West Virginia Supreme Court of Appeals, which, as noted earlier, has written that the WVCCPA should be construed liberally to accomplish that statute's purpose of "protecting consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action." *Scott Runyan Pontiac-Buick, Inc.*, 461 S.E.2d at 523. The undersigned finds that the legislature did not intend for debt collectors who violate the statute a hundred times to receive the same penalty as those who violate the WVCCPA only once. A single civil penalty would not deter debt collectors from repeatedly contacting consumers who appear to be represented by an attorney. Public policy thus supports multiple civil penalties.

*Stover I*, 2010 WL 1050426 at *7; 2010 U.S. Dist. Lexis 25035 at *22-23. This holding is equally applicable here as it was in *Stover*. A single penalty would not even amount to an accounting rounding error for debt collectors such as Defendant and would fail to deter illegal debt collection. Therefore, Defendant's argument that the range of penalties available for a single award allows for a repeat offender to be punished more seriously than a single offender is neither here nor there, as even a single penalty at the top of the range would not be a deterrent in many instances.

19

The Court finds that there is a genuine issue of material fact as to the number of alleged improper communications from Defendant to Plaintiffs.   A large number of the alleged communications at issue in this case are unanswered telephone calls, and the parties also dispute the number of calls made by Defendant.   Moreover, given Defendant's undisputed assertion that some of its calls failed, there is also a question of fact regarding the number of such unsuccessful telephone calls.

However, the Court does agree with Plaintiffs' arguments on the reasonableness of Defendant's policies, and finds that there is no genuine issue of fact as to whether it maintained procedures reasonably adapted to avoid the error in this case.   Therefore, despite Defendant's claim, the reasonableness of its procedures is not a question of fact for trial.   The Court agrees with Plaintiffs' argument that *Welker* is applicable to this case.   Just as in that litigation, none of the measures recited by Defendant in this matter demonstrate that its procedures were reasonably adapted to avoid the specific error at issue in this case.   Particularly, Defendant had no system to fix or correct its employee's failure to properly send Plaintiffs' attorney information to management. Accordingly, the lack of such procedures results in there being no genuine factual issue.   Moreover, the fact that its systems are designed to comply with the FFDCPA is also of no import given this Court's holding in Stover that compliance with the FFDCPA does not equate to WVCCPA compliance.   Further,  as the Court finds that there is no genuine issue of material fact on Defendant's procedures, the bona fide error defense is not applicable.   The defenses provided by Section 46A-2-128(e) are also not applicable.   There is no evidence that Plaintiffs' attorney failed to answer correspondence, return phone calls, discuss the obligation in question or consented to direct communication with Plaintiffs.

The Court also finds that there is no genuine issue of material fact as to whether the name and address of Plaintiffs' attorney was easily ascertainable. Plaintiffs provided Defendant with their attorney's name and phone number, which makes their attorney's address ascertainable. Defendant's theory that this was not sufficient is erroneous, and would render the "easily ascertained" language of the Representation Provision surplusage, as there would be nothing left to be ascertained.

Further, the Court finds that there is no genuine issue of material fact as to whether Plaintiffs failed to mitigate their damages as this affirmative defense is not applicable to the imposition of statutory damages. *Moothart*, 21 F.3d at 1505-07; *Glover ,*2007 Westlaw 2904050 at *3; *Phillips v. Netblue, Inc.*, Case No. C-05-4401 SC, 2006 Westlaw 3647116, *2 (N.D .Cal. December 12, 2006) (the "statutory damages provision in the CAN-SPAM act is a penalty and, as such, the award of such damages is not subject to the doctrine of mitigation of damages"); *Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp.2d 411, 422 (D. N.J. 2005) (mitigation of damages not appropriate defense in copyright infringement case where plaintiffs were seeking only statutory damages); *Jemiola,* 802 N.E.2d at 750. The WVCCPA specifically states that damages are to be imposed when the statute is violated.    Due to the mandatory statutory penalties, the mitigation doctrine is applicable only as to Plaintiffs' actual damages. Defendant's exclamations that Plaintiffs are using the WVCCPA as a sword impermissibly blames the latter for the former's alleged failure to follow the requirements of West Virginia law. After Plaintiffs properly informed Defendant that they were represented by counsel, they were under no obligation to do so again.

Additionally, the Court finds that there is no genuine issue of material fact as to whether Plaintiffs consented to being called, as there is no evidence that supports this proposition.

Defendant's argument, that it is entitled to the inference that Plaintiffs consented to further calls by initiating communication, fails as no factual evidence supports such an inference and it is not reasonable to infer that Plaintiffs would have consented to hundreds of telephone calls.   Even assuming *arguendo* that Plaintiffs did consent, West Virginia Code Section 46A-1-107 provides that a consumer may not "waive or agree to forgo rights or benefits" under the WVCCPA.   Defendant's other assertion that there is a genuine issue of material fact as to whether some of its calls were following up with the calls made by Plaintiffs is a non-starter as well. Again, there is no evidence to support even an inference of this nature. Moreover,  pursuant to the Representation Provision any follow up calls should have been directed to Plaintiff's counsel, not to Plaintiffs.

Finally, the Court finds that Defendant's due process argument is not ripe for review.   The Court has found that there are genuine issues of material fact that need to be resolved at trial regarding the alleged violations, and also has not made any determinations as to any penalties. Accordingly, as a decision on the merits would be an advisory opinion, the Court declines to address this issue.

Although the Court is aware that there is a disagreement between the parties regarding the Plaintiffs' dismissal of certain claims, the Court has ruled on the motion as originally presented.

*V. CONCLUSION*

For the reasons stated above, the Court **ORDERS** Plaintiffs' Motion for Summary Judgment on Amended Pleadings [Docket 56] **GRANTED** in part, and **DENIED** in part.  The Court further **ORDERS** Defendant's Motion for Summary Judgment in its Counterclaim for Declaratory Relief [Docket 54] **DENIED** .

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        October 19, 2010

IRENE C. BERGER, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA