# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

LAMONT CLEMENTS and
VERA CLEMENTS, his wife,

        Plaintiff,

v.                               CIVIL ACTION NO.  5:09-cv-00086

HSBC AUTO FINANCE, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This case is before the Court for decision on the merits following a one-day bench trial conducted on February 28, 2011.  Upon motion of the Defendant to Stay the Entry of a Ruling/Order on the Bench Trial [Docket 106], the Court entered an Order [Document 107] staying the issuance of the ruling until after May 4, 2011.  The matter is now ripe for ruling.

Plaintiffs' complaint, removed to this Court on January 30, 2009, alleges that Defendant violated the West Virginia Consumer Credit and Protection Act (WVCCPA), West Virginia Code Section 46A-1-101.  On May 18, 2010, Defendant filed a counterclaim for declaratory relief [Docket 52].  On October 18, 2010, the Court ruled on the parties' dispositive motions, denying Defendant's motion for summary judgment on its counterclaim for declaratory relief, and granting in part and denying in part Plaintiff's motion for summary judgment.

## I. FINDINGS OF FACT

On August 12, 2006, Defendant loaned Plaintiffs, Mr. and Mrs. Clements, $16,252.92, to be paid over seventy-two (72) months at $398.71 per month, for the purpose of purchasing a 2002 Chevy Trailblazer. Plaintiffs are retired and Mr. Clements suffers from Post Traumatic Stress Syndrome as a result of his service in the Vietnam War. They care for Mrs. Clements' mother and their two grandchildren. Plaintiffs made timely payments from September 2006 through December 2006, but became thirty days past due in January 2007. (Ex. 4; Tr. 156:5-6.) After that, Plaintiffs began working with Defendant to get extensions on the loan and pay double the amount of the monthly payment to catch up on late payments. At least one of Plaintiffs' checks was invalid. Plaintiffs were only current on their payments three (3) times between December 2006 and the time their complaint was filed in January 2009. (Tr. Ex. 8.) As Plaintiffs became delinquent, they received communication from Defendant regarding their debt. According to the testimony, when a customer informs Defendant of the name of his or her attorney, it is Defendant's policy to document that information and route the customer's account to a manager, who would confirm the information and then block the customer's number from future calls. (Tr. 132-133.)

On May 20, 2008, Mr. Clements contacted Defendant and informed Defendant's agent that he and his wife had retained an attorney. He gave the agent the attorney's name, Paul Roop, and his telephone number. Defendant's agent noted this information in the "comments" section of the call log for May 20, 2008. (Tr. Ex. 2, p.1.) Defendant continued to contact Plaintiffs and did not communicate with their attorney, despite the May 20, 2008, notice. Defendant began regularly contacting Plaintiffs regarding their debt on May 21, 2008. Between May 2008 and January 2009, Defendants dialed Plaintiff's cellular and home phone numbers eight hundred eighty-five (885) times

and sent them written or electronic correspondence fourteen (14) times. (Tr. Ex. 6.) Only thirteen (13) of the dialings resulted in actual contact between Defendant and Plaintiffs. (Tr. 118:5-7.) Twenty-four (24) of the calls failed to go through as a result of an incorrect or out-of-service number or a busy signal. (Tr. 181:11-14, 20-23.) During this period of time, Plaintiffs made several attempts to work out a payment arrangement with Defendant that would bring them current on their payments, but Defendant continued its attempts to contact them by phone.

Although Plaintiffs were not always in the home when the home phone rang, they always had their cellular phones with them and they were able to see missed calls from Defendant on their Caller ID. (Tr. 70:15-18.) Plaintiffs answered the calls periodically. Mrs. Clements testified that when she picked up the phone, the nature of the calls was in relation to their loan. (Tr. 87:5-10.) From that information, the Plaintiffs were able to deduce that the unanswered and missed calls from Defendant were also related to their loan. (Tr. 105:6-11.) Occasionally, Plaintiffs were on their phone, but because of their call waiting service, they were aware when another call came in. Plaintiffs testified that often they let the phone ring without picking it up, and occasionally when they picked up the phone no one was on the other line. (Tr. 40:18-20; 86:10-11.) Defendant's records reveal that calls to Plaintiffs averaged three (3) to four (4) per day. (Tr. Ex. 3.) The largest number of calls on one day was twenty-one (21) with the mode being five (5) calls per day. None of the calls occurred before 8:00 A.M., or after 9:00 P.M.

Linda Vrazel, Defendant's representative, testified about the strategy for making phone calls to debtors. Defendant utilized an automatic dialer to initiate calls to customers. The timing and frequency of the calls depend on the customers' delinquency, what time the customers had been reached in the past and other information noted in the customers' account notes. (Tr. 116:11-14.)

If the dialer called a customer and the customer did not answer, the dialer was programmed to continue calling the customer throughout the day. (Tr. 118:3-7.) If the contact was unsuccessful, it was Defendant's policy to leave a message at the end of the day, but not before. (Tr. 119:6-7.) After a message was left, no more calls would be made to the customer on that day. (Tr. 127:19-20.) There was no limit on the number of times a customer could be dialed in one day. (Tr. 118:12-14.) Ms. Vrazel testified that the intent of these calls was "to collect on the debt . . . and help the customer." (Tr. 119:24-25.)

The phone calls from Defendant caused Plaintiffs annoyance and irritation. They testified that the calls were frustrating, invasive and nerve-wracking, and that they caused a strain on their family's relationships. Neither Plaintiff sought medical attention or treatment for this stress. Mrs. Clements testified that she informed Defendant on multiple occasions that she had an attorney, but the calls continued. (Tr. 82:11-13.) Ms. Vrazel also testified that the Plaintiffs expressed that they were represented by an attorney on at least two occasions. (Tr. 179:10-13.)

## II. APPLICABLE LAW

Plaintiffs assert the following violations for the WVCCPA: Unfair or Unconscionable Means to Collect a Debt (§ 46A-2-128(e)), Oppression and Abuse (§ 46A-2-125) and Intentional Oppression and Abuse through Use of the Telephone (§ 46A-2-125(d)). The State of West Virginia has declared it an unfair or unconscionable method of debt collection for a debt collector to contact a debtor directly when it has notice that the debtor is represented by an attorney. West Virginia Code Section 46A-2-128(e) states as follows:

4

> No debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> . . .
>
> (e) Any communication with a consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained, unless the attorney fails to answer correspondence, return phone calls or discuss the obligation in question or unless the attorney consents to direct communication.

W.Va. Code § 46A-2-128(e). West Virginia Section 46A-2-125 (the "Abuse Provision") prohibits a creditor from "unreasonably" oppressive and abusive behavior. West Virginia Code Section 46A-2-125 states,

> No debt collector shall unreasonably oppress or abuse any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> . . .
>
> (d) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number.

W.Va. Code § 46A-2-125(d). Regarding the civil damages that a plaintiff filing suit under the WVCCPA may be able to recover, West Virginia Code Section 46A-5-101(1) provides that "[i]f a creditor has violated the provisions of this chapter applying to . . . any prohibited debt collection practice . . . the consumer has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty in an amount determined by the court." W.Va. Code § 46A-5-101(1).

The Supreme Court of Appeals of West Virginia has indicated that the WVCCPA is to be construed broadly:

> The purpose of the [WVCCPA] is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action. As suggested by the court in *State v. Custom Pools*, 150 Vt. 533, 536, 556 A.2d 72, 74 (1988), "[i]t must be our primary objective to give meaning and effect to this legislative purpose." Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended.

*State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516, 523 (W.Va.1995) (internal citations omitted).

## III. CONCLUSIONS OF LAW

The Plaintiffs have demonstrated by a preponderance of the evidence that Defendant violated Section 46A-2-128(e) by contacting them after May 20, 2008, when they first gave Defendant their attorney's name and contact information. Defendant called Plaintiffs' phone numbers eight hundred sixty-one (861) times and sent Plaintiffs fourteen (14) written communications after it was aware that they had retained counsel and Defendant did not attempt to contact their attorney. Defendant's evidence revealed no meritorious defense to this violation. Thus, Plaintiffs are entitled to an award based on the violations of this provision.

As to Plaintiffs' other claims, the Court concludes that Defendant also violated Section 46A-2-125 by causing Plaintiffs' phones to ring repeatedly or continuously with the intent to annoy, abuse or oppress the Plaintiffs. Defendant caused Plaintiffs' phones to ring eight hundred sixty-one (861) times over a period of two hundred thirty-five (235) days, with up to twenty-one (21) calls in one (1) day. Although all calls occurred between 8:00 A.M., and 9:00 P.M., the number of calls Defendant made per day in that time period constitutes continuous and repeated calling.

In this case, the Court finds that the Defendant made a single call on May 21, 2008, one day after Defendant was notified of Plaintiffs' attorney. After that, Defendant called Plaintiffs nine (9) times on June 6, 2008, seven (7) times on June 7, 2008, nine (9) times on June 8, 2008, five (5) times on June 9, 2008, twice on June 10, 2008, three (3) times on June 15, 2008, and five (5) times on June 24, 2008. The Court finds that even if one accepts that Defendant's agent made an error in not blocking Plaintiffs' account from future calls after May 20, 2008, the continuance of Defendant's calls after the month of June is indicative of an intent to annoy, abuse or oppress Plaintiffs. The Court makes this finding in light of the totality of the evidence in this case and particularly in light of the Defendant continuing to make a large number of calls, its aggressiveness in making calls even after it admits it was notified, on at least two occasions, of Plaintiffs' legal representation, and its failure, at any point, to initiate legally available debt collection practices by contacting the attorney and/or by instituting repossession proceedings. Further, the Court finds it to be telling that although the calls produced no results over the course of months, the Defendant continued to make them. The Defendant's overall course of conduct with respect to the Plaintiffs evidences its intent to annoy, abuse and/or oppress them. Had the Defendant made an error in calling the Plaintiffs, and one month and a few calls later reviewed its call logs to discover that they had an attorney, and ceased making the calls, the Court would have had more difficulty finding an intent to annoy, abuse or oppress. However, despite the May 20, 2008, call log clearly noting, in Plaintiffs' account, that they were represented by counsel, Defendant made eight hundred sixty-one (861) calls over the course of seven months. Notwithstanding the above findings, after a careful review of the evidence and taking into account the specific facts and circumstances of this case, the Court finds that the evidence does not clearly establish, by a preponderance, that the initial calls made during the month of June were made

7

with the intent to annoy, abuse or oppress as required by the statute. Thus, the number of phone calls at issue, on this particular claim, is eight hundred twenty-one (821).

The Court finds that these eight hundred twenty-one (821) calls were, in fact, made with the intent to annoy, abuse or oppress Plaintiffs. To the extent that phone calls can be harassment, these calls were. Defendant's own call log is the best evidence of this. There were multiple occasions on which Defendant worked with Plaintiffs to allow for late payments, and the stated intent of the phone calls was to collect a debt. However, the evidence indicates that Defendant's intent was not confined to helping or collecting.

The pattern and volume of the calls, alone, evidences harassment. Courts analyzing the Fair Debt Collection Practices Act have held that "[w]hether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls." *Akalwadi v. Risk Management Alternatives, Inc.*, 336 F.Supp.2d 492 (D.Md.2004); *see Udell v. Kansas Counselors, Inc.*, 313 F.Supp.2d 1135, 1143 (D.Kan.2004) (holding that four calls over seven days by a debt collector without leaving a message did not amount to harassment); *In Kuhn v. Account Control Tech., Inc.* 865 F.Supp. 1443, 1453 (D.Nev.1994) (finding that six phone calls in a span of twenty-four minutes constituted harassment); *In Bingham v. Collection Bureau, Inc.* 505 F.Supp. 864, 873 (D.N.D.1981) (holding that when a call was terminated and the collection agency called back immediately, that subsequent call alone could constitute harassment); *see also Kerr v. Dubowsky*, 71 Fed. Appx. 656, 657 (9th Cir.2003) (affirming district court's dismissal of claim where complaint alleged calls from debt collector were "unwanted" but failed to allege facts that the calls were intended to harass, oppress, or abuse).

Plaintiffs informed Defendant that they had an attorney on more than one occasion, but Defendant continued to call with the same frequency. Additionally, Plaintiffs answered several calls to find there was no one on the other line. If Defendant's intent in each of the eight hundred twenty-one (821) calls was solely to speak to the Plaintiffs for the purpose of helping them or collecting the debt, someone would have been on the line and this type of call would not have taken place. Moreover, as noted above, not once during the seven months of calling eight hundred sixty one (861) times, with no satisfactory response from Plaintiffs, did Defendant initiate its available legal remedies to collect on Plaintiffs' loan.

That Plaintiffs were not at home all of the time and, therefore, could not have heard each one of the calls is of little moment. They had notice of every missed call through Caller ID. In its closing, Defendant attempted to connect the amount of stress Plaintiffs suffered with the number of calls they answered or heard, totaling thirteen phone calls. For those who dismiss the idea that simple knowledge that a phone call took place can be oppressive or abusive, the Court submits examples of instances when a woman receives ten missed calls from an ex-boyfriend in an hour, or a person at work notices three missed calls from his or her child's day care, or even when someone comes home after a movie to find five missed calls from a family member. Missed calls communicate more than a phone number. They can, depending on volume and frequency, communicate urgency and panic. It would be difficult to find the requisite intent if only thirteen calls were at issue. However, given that even the unanswered calls communicated intimidation or harassment to Plaintiffs, albeit not necessarily at the time the calls were made, but certainly when the calls were subsequently discovered, Defendant's eight hundred twenty-one (821) calls to Plaintiffs over seven (7) months represent the type of conduct Section 46A-2-125 seeks to prevent.

## IV.  AWARD

The Court has already found that the WVCCPA provides for a penalty for each violation of the Act.  It is clear that each of the eight hundred sixty one (861) calls that went through to Plaintiffs' phones and fourteen (14) instances of written communication after May 20, 2008, constitute separate violations of Section 46A-2-128(e) of the WVCCPA.  Additionally, for the reasons mentioned above, the eight hundred twenty-one (821) calls made to Plaintiffs after June 2008, whether answered or heard, were communications and, thus, violations of Section 46A-2-125 of the WVCCPA.

### A.  ACTUAL DAMAGES

The evidence of the effect of the phone calls on Plaintiffs is moderate.  Mr. Clements has a stress condition that was aggravated, and both Plaintiffs reported frustration, aggravation, and annoyance, but neither of them reported conditions that required medical treatment or counseling.  Although the Court has expressed above that unanswered calls communicate more than a number, the stress that communication creates depends on the context of the call.  In the case of the caller being the ex-boyfriend, the day care or the family member, the recipient of the missed call may presume actual danger or tragedy.  In this case, Plaintiffs are debtors who failed to fulfill the obligations of their loan.  The volume and frequency of the calls to them were certainly annoying, abusive and oppressive, but the <u>evidence</u> of the stress resulting from these communications was minimal.  Rather than assigning each violation, the Court finds that the amount of five thousand dollars ($5,000.00) is a sufficient amount to compensate Plaintiffs for their actual damages.

## B. PENALTIES

Plaintiffs also have the right in an action to recover from Defendant a "penalty in an amount determined by the court not less than one hundred dollars nor more than one thousand dollars." W.Va. Code §46A-5-101(1). Giving effect to the Court's earlier ruling on October 18, 2010, and its ruling in *Stover v. Fingerhut Direct Marketing, Inc.*, Case No. 5:09-cv-00152, Docket 69, 2010 WL 1050426 (March 17, 2010), each violation is subject to a statutory penalty. Because the violations of the two different sections of the WVCCPA arise out of the same conduct, the Court will not award double penalties for a single phone call. Although, two separate statutory provisions are at issue here, given the facts of this case, the evidence establishing the violations of these provisions is very much intertwined. For instance, although the evidence of eight hundred seventy-five (875) communications after notification of legal representation establishes a violation of 46A-2-128(e), that same evidence of eight hundred seventy-five (875) communications after notification is relevant to the Court's finding of the intent necessary to establish violation of 46A-2-125(d). So, after careful consideration, the Court finds that the Defendant is subject to penalties for a maximum of eight hundred seventy-five (875) violations – eight hundred sixty-one (861) calls and fourteen(14) written communications. The fact that eight hundred twenty-one (821) of the communications violate two separate provisions of the WVCCPA does not necessitate two separate penalties, particularly in light of the facts of this case.

In determining the proper penalties, the Court is mindful that the eight hundred seventy-fifth (875th) violation should not carry the same penalty as the first violation. The amount of a penalty should have a direct relationship to the egregiousness of the violation, and each repeated violation is more egregious than the last. Given the Court's finding that, unlike the last eight hundred twenty-

one (821) calls, the evidence does not clearly establish that the first forty (40) calls (which violate 46A-2-128(e)) were made with the intent to annoy, abuse and oppress, the Court assigns the minimum penalty of one hundred dollars ($100) to those calls. After that, the remaining eight hundred thirty-five (835) communications are subject to a penalty between one hundred dollars ($100) and one thousand dollars ( $1000). The Court is mindful of the nature of the violations in this case, and the possibility of more extreme or reprehensible violations (e.g. actual threats and verbal harassment), and accordingly, assigns the maximum penalty only to the final twenty-five (25) communications, finding those communications the most persistent and egregious of the violations. The rest of the violations carry increasing penalties, because as the communications continued, the intent and egregiousness of them increased. The eight hundred seventy-five (875) violations are assigned penalties as follows:

| Communications | Penalty Value | Total |
| --- | --- | --- |
| 1 - 40 (40) | $ 100.00 | $ 4,000.00 |
| 41 - 200 (160) | $ 125.00 | $ 20,000.00 |
| 201 - 500 (300) | $ 150.00 | $ 45,000.00 |
| 501 - 650 (150) | $ 200.00 | $ 30,000.00 |
| 651 - 700 (50) | $ 250.00 | $ 12,500.00 |
| 701 - 725 (25) | $ 300.00 | $ 7,500.00 |
| 726 - 750 (25) | $ 375.00 | $ 9,375.00 |
| 751 - 775 (25) | $ 400.00 | $ 10,000.00 |
| 776 - 800 (25) | $ 450.00 | $ 11,250.00 |
| 801 - 825 (25) | $ 500.00 | $ 12,500.00 |
| 826 - 850 (25) | $ 700.00 | $ 17,500.00 |
| 851 - 875 (25) | $ 1,000.00 | $ 25,000.00 |

This results in a total of two hundred four thousand six hundred twenty-five dollars ($204,625.00) in penalties. Although this Court recognizes that this total, in penalties, is substantial, it is directly related to the huge number of violations in this case. The Court makes no effort to set any standard or precedent in assessing penalties (for any particular number of calls) since the facts and circumstances of each case must dictate the applicable result. Further, throughout the entirety of this case, the Court has liberally construed the applicable provisions to give effect to the legislative purpose of protecting consumers from unfair, illegal and deceptive collection practices.

## V. CONCLUSION

It is the judgment of this Court that Plaintiff be awarded Five Thousand Dollars ($5,000.00) in actual damages and Two Hundred Four Thousand Six Hundred Twenty-Five Dollars ($204,625.00) in statutory penalties, for a total of Two Hundred Nine Thousand Six Hundred Twenty-Five Dollars ($209,625.00).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: July 21, 2011

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA